(26 Misc. Rep. 513.)

### RIDLEY v. PAILLARD et al.

(Supreme Court, Special Term, New York County. February, 1899.)

INSURANCE COMPANY—DIRECTORS—LIABILITY TO MEMBERS.

    A fund arising under the constitution of an assessment insurance company, providing that a certain per cent. of the assessments shall be set aside as a safety fund to meet any contingency that might arise by reason of extra mortality, but that no part of it should otherwise be used for the payment of expenses, but that the net amount added to such fund in each year should, in the eleventh year thereafter, be used to decrease the assessments of such persons as had been members for 10 consecutive years, is not assets of the society; and members who would have been entitled to the benefits thereof may, on dissolution of the company, sue one of the directors as a joint tort feasor, the directors having by vote transferred it to the mortuary fund, and it having been used to pay the usual death claims

Action by James D. Ridley against Alfred E. Paillard and another. Defendant Paillard demurs to the complaint. Demurrer overruled.

Raphael J. Moses, for plaintiff.
Charles S. Noyes, for defendant Paillard.

NASH, J. The questions raised by the demurrer to the complaint —that the plaintiff has not legal capacity to sue; that there is a defect of parties plaintiff, a defect of parties defendant; that there are other persons who were in control of the fund, and jointly liable with the defendant, who have not been made defendants; and that the complaint does not state facts sufficient to constitute a cause of action—are all determinable by the ascertainment of the character of the action. The plaintiff alleges: That on the 10th day of June, 1885, he entered into a contract with the Family Fund Society, a domestic corporation, then doing business under the laws of the state of New York as a co-operative and assessment life insurance association, a copy of which, marked "Exhibit A," is attached to the complaint. That on January 31, 1891, proceedings were commenced by the attorney general in behalf of the people of the state of New York against the association to procure its dissolution, and the distribution

of its assets among its creditors, and its trustees, officers, and agents were enjoined from exercising its corporate franchise and powers, and from collecting, receiving, or disposing of any of its money, property, or assets. That thereafter, and on October 8, 1891, the association was dissolved, and the defendant Oliver appointed the receiver thereof. That by the terms of the contract or "bond," as it is designated, entered into with the association by the plaintiff, in consideration of the payment of certain sums for admission fee, annual dues, and expenses, and all mortuary calls, the plaintiff was by the terms of the bond admitted to membership in the general department of the association, and the plaintiff alleges that during the existence of the association he kept and performed all of the conditions of said bond on his part to be kept and performed. That during the period elapsing between June 10, 1885, and January 31, 1891, the Family Fund Society made mortuary calls upon the plaintiff, and the plaintiff paid to the society, pursuant to such calls, $69.09, of which sum $12.22 was paid prior to December 1, 1886, and $56.87 thereafter. That on the 10th day of June, 1885, the constitution of the Family Fund Society then in force provided (article 9, § 1):

"Twenty per cent. of each net death assessment or mortuary call should be deposited in a trust company as a reserve fund to be accumulated to meet any contingency that may arise by reason of extra mortality or otherwise, but no part of such reserve fund shall be used for the payment of expenses. Such reserve fund shall be for the exclusive benefit of the members of the society. and may be returned to the persistent members according to the terms and conditions of the bond or certificate of membership issued."

That on November 27, 1886, the said article of the said constitution was amended, to take effect on the 1st day of December, 1886, and, as amended, read:

"Art. 9. Safety Fund. Twenty per cent. of the net amount realized on each quarterly or other death assessment or mortuary calls received from members in what is termed the 'general department' shall be deposited to the credit of the society in a bank or trust company designated by the board of directors, or invested and reinvested by the treasurer, subject to the direction and approval of the board or of the executive committee, as a permanent safety fund. The said safety fund may be used by the board of directors, in their discretion, to make any deposits required or allowed by the laws or usage of this or any other state or foreign country, or to equalize quarterly or other assessments or mortuary calls, or to meet any want or necessity of the society that may hereafter arise by reason of unusual mortality. The net amount of principal added to the safety fund in each calendar year not used for extra mortality shall, in the eleventh calendar year thereafter, be used to decrease the number or amount of quarterly or other assessments of such persons as shall have been members of the society for a period of ten consecutive years, in such mode, manner, and form as the board of directors may decide to be equitable and expedient for the best interests of the society. Such safety fund shall not otherwise be used for the payment of the expenses of the society. All moneys belonging to the mortuary fund or the safety fund shall be kept invested and reinvested in sound securities at the highest rate of interest obtainable thereon consistent with safety, except such amounts thereof as may be required to be on deposit in cash to meet maturing claims thereon. That said two funds shall be kept entirely separate and distinct from each other. Any balance which may be on hand to the credit of the reserve fund, after providing for contingencies by reason of extra mortality or otherwise, shall be, and the same is hereby, transferred to the safety fund, and shall become a portion thereof; reserving, however, all existing rights, if any, therein."

That the society collected and held from mortuary calls between December 1, 1886, and January 31, 1891, the sum of $48,450 to the credit of the safety fund, and subject to the special trust imposed by the terms of the policies or bonds similar to Exhibit A, and under article 9 of the constitution of the Family Fund Society as amended on November 27, 1886. That the defendant Paillard was made a director of the society on the 26th of January, 1888, and accepted the office, and continued to be a director of the society during the remainder of the period of its existence. That the defendant Paillard was present and took part at the meetings of the board of directors of the society, duly called, and at which there was a quorum present, held at the office of the society on certain days from and including the 1st day of May, 1888, to and including January 30, 1891, and then and there, as such director, and constituting a part of the majority of the quorum there present and voting, passed resolutions on such several days respectively, transferring from the safety fund to the mortuary fund certain sums specified in the complaint, aggregating $23,900; and under and pursuant to the authority of said resolutions there was taken from said safety fund the said sum of $23,900 in the amounts and on the dates respectively set out in the complaint. That the action of the defendant Alfred E. Paillard and his associates in the board of directors of the Family Fund Society illegally transferred said safety fund to the mortuary fund, and was done with the intent and for the purpose of having the said moneys used in payment of the expenses of said society, and of usual and expected death claims, generally, in violation of the rights of this plaintiff and other persistent members of the Family Fund Society, and this plaintiff alleges that the said several amounts so transferred to said mortuary fund are in fact used in payment of the expenses of said society, and for the usual and expected death claims. That this action is brought by the plaintiff on behalf of himself and all others similarly situated, persistent members of said Family Fund Society, whose policies or bonds were in force on the 31st day of January, 1891, and that such policyholders exceed 300 in number.

As adjudged in the case of In re Equitable Reserve Fund Life Ass'n of New York, 131 N. Y. 354, 30 N. E. 114, it must be held that the fund collected and received by the Family Fund Society designated as the "Safety Fund," was not at any time assets of the society, within the general meaning of the term, but was received and held by the society in the nature of a trust, for the benefit of the "persistent members," of whom the plaintiff is one; and, if the fund should be compelled to be restored, it cannot be distributed among the general creditors of the society. Within the rule applicable to the liabilities of directors or agents of corporations, the directors of the society are liable for their own wrongful acts in transferring the fund from the safety fund to the mortuary fund, by means of which the safety fund was misapplied, and lost to the beneficiaries. The principle upon which the liability exists is stated in Mor. Priv. Corp. §§ 566–570, where it is said that the liability of the directors or agents is entirely independent of any liability which the company may have incurred. If the company contracted to keep the property in safety,

it would be liable to the owner for the breach of this contract. If the agents of a corporation knowingly participate in any misapplication of a fund held by the corporation in trust, they are liable in equity to the beneficiaries of the fund. The liability of the director to the beneficiary is solely for his positive misfeasance constituting a tort at common law. Others participating in the tortious act need not be joined, as all are jointly and severally liable, and neither is liable to the other for contribution. The fund not being the property of the Family Fund Society, the right of action against the defendant tort feasor was not the property of the corporation, and does not pass to the receiver. The fund having been expended for its purposes, an action could not have been maintained by the corporation for the restoration of the fund, and it would have been compelled to have restored it. The receiver is made a party by direction of the court, and will represent any interest the corporation may possibly have in the subject-matter of the action, and, as the corporation participated in the misapplication of the fund, he may perhaps be a necessary party. No objection to his being a party is taken by the demurrer. The demurrer in this and the other actions—Gifford v. Clapp and Mills v. Noyes—overruled.

Demurrer overruled.